# HALEY v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### In Banc, June 1, 1906.*

1. **NEGLIGENCE: Violation of Ordinance: Common Law Negligence.** Following plaintiff's averments which set forth a supposed ordinance and the facts constituting a breach of its requirements, is another paragraph in which without reference to the ordinance it is said that defendant then and there "negligently and wrongfully ran its train at a great and unlawful speed, to-wit, at a rate of speed greater than six miles an hour and greater than fifteen miles an hour." At the time of the accident the ordinance pleaded had been repealed. *Held*, that the second paragraph when taken in connection with what follows describing the situation, states a common law act of negligence, and the petition is not held to state as the only act of negligence a violation of the ordinance.

2. ———: **Pleading Several Acts in One Count.** Several acts of negligence of the same nature, all of which may be true and either of which or all of which together may have caused the accident, may be pleaded in one count.

3. ———: **Speed of Train: Common Law.** In the absence of a statute or ordinance on the subject, the question of whether or not a given rate of speed of a train running through a populous city is negligence, is, ordinarily, one of fact, not of law. And the question depends on the surrounding circumstances; a rate that would be entirely safe under some conditions would be recklessly dangerous under others.

4. ———: ———: ———: **Conditions: Nonsuit: Question for Jury.** The evidence tended to show that the train, consisting of twenty or more freight cars, propelled by two engines, one in the rear and one in front, came through a curve near the river into a street at a point where the street was so narrow that the train could not pass a wagon therein without striking it, it being a public street in which a wagon of the kind plaintiff was driving was liable to be; that the train was running eighteen or twenty miles an hour, the speed being such that plaintiff did not have reasonable time in which to drive out of

Note.—Decided in Division One, February 22, 1906; **Marshall,** J., dissenting, the case was transferred to Court in Banc, and there reargued, and divisional opinion adopted June 1.

danger, and being such as to render it doubtful whether the engineer on the front engine could, by the exercise of ordinary care, have stopped it in time to have avoided the accident after he discovered the danger. *Held*, that it was the duty of the court to have submitted to the jury whether or not it was negligence to run the train at that rate of speed.

5. —— : ——: **High Speed: Necessary to Ascend Grade.** If the grade was such that the train could not have ascended it without the aid of the momentum to be acquired by a high rate of speed, that fact did not justify the defendant in running its train at such speed, if to do so rendered it liable to kill or cripple people who, without negligence on their part, were liable to be on the street and were therefore to·be expected to be there, or if to do só rendered it impossible for the engineer to stop in time to avert such an accident after he should come in view of the danger.

6. ——: **High Speed and Not Stopping Train: Inconsistent Averments.** A charge that the train was being run at a negligent speed and a charge that the defendant failed to stop the train in time to have avoided the accident after the danger was apparent, are not necessarily inconsistent.

7. ——: **Negligent Speed: Impossible to Stop: Wantonness.** Although the speed may have been negligent, the defendant is not liable, under what is called the humanitarian doctrine, if the speed was such as to render it impossible for the engineer, by the exercise of ordinary care, to have stopped it in time to have avoided the accident.

8. ——: **Contributory: Knowledge of Danger: Question for Jury.** The law imposes on the driver of a wagon familiar with the surroundings and who knows he is liable to encounter a train in a narrow street in which the defendant's tracks are, the duty of exercising a degree of care commensurate with the danger to be expected. But his knowledge does not render it negligence *per se* for him to drive his wagon on the street. If he uses the care that a man of ordinary prudence under like circumstances and knowing the danger to be apprehended would have exercised, he is entitled to recover for injuries due to the defendant's negligence. And where he testifies that he stopped and listened before driving onto the narrow street, but heard no train; that when he got onto the street, but before he turned into it, he stopped and looked both ways, but saw no train; that on former occasions he had heard trains whistle at a whistling point, but heard none this time, the question of his contributory negligence is one for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss,* Judge.

AFFIRMED.

*Martin L. Clardy* and *Henry G. Herbel* for appellant.

The court erred in sustaining plaintiff's motion to set aside the nonsuit. McHugh v. Railroad, 88 S. W. 855; Maher v. Railroad, 64 Mo. 275; Petty v. Railroad, 179 Mo. 674; Coatney v. Railroad, 151 Mo. 35; Bank v. Trust Co., 179 Mo. 660; Ottomeyer v. Pritchett, 178 Mo. 165; McGauley v. Railroad, 179 Mo. 592; Ledwidge v. Railroad, 73 S. W. 1009; Sindlinger v. City of Kansas, 126 Mo. 327; Turner v. Railroad, 74 Mo. 607; Gilbert v. Railroad, 128 Fed. 533; Fellenz v. Railroad, 80 S. W. 49; Culbertson v. Railroad, 140 Mo. 63; Markowitz v. Railroad, 85 S. W. 353; Skipton v. Railroad, 82 Mo. App. 142; Railroad v. Houston, 95 U. S. 702; Kelsay v. Railroad, 129 Mo. 372; Railroad v. Williford, 88 S. W. 180; Sluder v. Railroad, 189 Mo. 107; Duncan v. Railroad, 46 Mo. App. 207; Railroad v. Harbison, 88 S. W. 414.

*Edward C. Eliot* and *V. Mott Porter* for respondent.

The action of the court in sustaining plaintiff's motion to set aside the nonsuit and for new trial was correct and should be affirmed. McPheeters v. Railroad, 45 Mo. 22; Petty v. Railroad, 179 Mo. 666; Hill v. Railroad, 121 Mo. 477; Powell v. Railroad, 59 Mo. App. 626; O'Connor v. Railroad, 94 Mo. 150; Hanlon v. Railroad, 104 Mo. 381; Neier v. Railroad, 12 Mo. App. 25; Brown v. Railroad, 50 Mo. 461; Easly v. Railroad, 113 Mo. 236.

VALLIANT, J.—Defendant has a railroad track extending from the south along the wharf or levee, as it is usually called, turning west into Poplar street,

thence along Poplar street west to a distant point in the city. While the plaintiff, on February 12, 1901, was driving a two-horse wagon in Poplar street a locomotive drawing a freight train on defendant's road struck the wagon, causing the plaintiff to be thrown therefrom and severely injured.

In the petition it is stated that there was at that time a city ordinance forbidding the running of a locomotive or train on a steam railroad in the city at a greater rate of speed than six miles an hour; that this was a steam railroad and that this locomotive and train were running at a speed in excess of that rate. After pleading the ordinance and the facts requisite to constitute a violation of it, the petition goes on to state that the defendant then and there "negligently and wrongfully ran its train . . . at a great and unlawful speed, to-wit, at a rate of speed greater than six miles an hour and greater than fifteen miles an hour." Then follow averments to the effect that the width of defendant's engine and cars was such that they so occupied, monopolized and obstructed the street that there was not left sufficient space in the street for an ordinary wagon or the wagon plaintiff was driving to pass without being struck by the engine, and under those conditions the defendant so wrongfully and negligently ran its train as to render it impossible for plaintiff to pass or escape; that it was a long train propelled by a locomotive at the rear end pushing, and another at the front drawing, and that defendant thus so operated the train that the man in charge of the rear engine could not see to the front in time to foresee and avoid collision; that the train was so negligently operated that it was not stopped or arrested as soon as might have been done after the engineer of the front engine discovered the plaintiff on the street and knew or by the exercise of ordinary intelligence would have known that only by prompt stopping of the train could the collision be avoided. The petition then charges

that from those wrongful and negligent acts the accident resulted.

The answer was a general denial and a plea of contributory negligence. Reply, general denial.

The testimony for the plaintiff tended to prove as follows:

Poplar street runs east and west; in that part of it to which our attention is now directed it is narrow. There is a stone curbing on each side marking off the space for sidewalks; the sidewalks are of cinders. The width of the street is twenty feet eight inches from curb to curb. When a train is on the track there is not space between it and the curb on either side for a wagon of ordinary width to pass. Defendant's track comes from the south along the levee and curves west across a vacant lot into Poplar street. Main street, running north and south, crosses Poplar street. From the west line of the levee to the east line of Main street the distance is 226 feet. Main street there is thirty-eight feet six inches wide. Between Main and the next parallel street west, there is an alley which comes from the north and ends in Poplar street. On the south side of Poplar street opposite the mouth of the alley is a vacant lot. From the east line of this alley to the west line of Main street the distance is 161 feet; so that from the east line of the alley to the west line of the levee the distance is 425 feet six inches. Standing at a point in the center of the alley on the north line of Poplar street looking east one could see an object on the railroad track on the levee 540 or 545 feet distant. From the levee to the alley the track rises in grade one foot nine inches to the one hundred feet, making a total rise in that distance of ten feet eleven and one-half inches.

Plaintiff was a teamster for the Charter Oak Stove Company. He was driving a two-horse stake wagon, the driver's seat of which was seven or eight feet above

the ground. He was going south in the alley; his aim was to go to the Iron Mountain depot, which was south of Poplar street; when he came to Poplar street, knowing that the railroad was there and that a train was liable to be coming one way or the other, he stopped a few feet from the mouth of the alley and listened for 'a train; hearing none he drove out of the alley into the street and looked each way but saw no train; he drove across the railroad track to the south side of the street, turned east, and drove twenty-five or thirty feet when he heard the whistle of the locomotive, and immediately thereafter saw it coming around the curve from the levee into Poplar street; it was coming fast and he realized his danger, he knew there was not space between the track and the curb for his wagon to pass the train; he estimated he was too close to the curb to cross it without swinging out so as to approach it at a more favorable angle and that he could not get into Main street on the south for the same reason, therefore in the emergency he turned his team to the northeast, aiming to cross the track and escape into Main street on the north. He had almost succeeded, his horses and the front part of the wagon had got into Main street, but the locomotive caught his east hind wheel, drew the wagon back into Poplar street, forced it through the side of the old brick house, breaking a hole into the wall, the plaintiff falling into the breach and the bricks of the broken wall falling on him, inflicting such injuries as resulted in the amputation of his left leg. It was a long freight train with a locomotive at each end and was going fifteen or twenty miles an hour. It was necessary for the train to go that fast in order to climb the grade of the curve.

One of plaintiff's witnesses, a mail carrier, testified that as he was opening a mail box that stood at the southwest corner of Main and Poplar streets he heard the whistle of the locomotive at Gratiot street which was a few squares south, and he saw a watchman then

come out of his watchhouse with a white flag in his hand and cross to the north side of the track; witness went into an office which was a few feet from the mail box, delivered some mail there, and when he came out the watchman was standing where he last saw him holding the flag in his hand; witness turned west on the south side of Poplar street and saw the plaintiff as he drove out of the alley across the track and turn east; just then the train came in sight around the curve. The plaintiff testified that he did not see the watchman until about the time he also saw the train. The watchman was waving a white flag. Plaintiff was familiar with the locality—said he had been over it a thousand times. On other occasions he had heard the whistle of coming trains at Gratiot street, but did not hear a whistle there at this time; the first he heard of this train was the whistle on the curve as it turned into Poplar street which was after he had driven across the track.

At the close of the plaintiff's evidence the court gave an instruction that forced the plaintiff to take a nonsuit with leave, but afterwards the court sustained the plaintiff's motion to set aside the nonsuit, and the defendant appealed.

I. The first point of difference between appellant and respondent to which our attention is called is in reference to the allegations of negligence in the petition. As appellant construes the petition it charges only two acts of negligence, viz.: a violation of the city ordinance regulating the speed of locomotives, and a failure to use ordinary care to avoid the injury after the engineer saw the plaintiff in peril. Respondent construes it to charge also common-law negligence as to speed. The significance of this feature of the plaintiff's case is in the fact that there was at the time of this accident no such ordinance as that pleaded in force in that part of the city, and, therefore, unless there was in the petition a charge of common-law negligence in

the matter of speed there was no charge of negligent speed at all. The fact is there had been a city ordinance limiting the speed of locomotives to six miles an hour at that place, but it had, before this accident, been repealed. That the plaintiff in the beginning relied, in part at least, on that ordinance, is shown by the fact that it is specifically pleaded by number, title and legal effect, and is followed by averments of facts constituting a violation of its terms. Before the trial, however, the plaintiff discovered that the ordinance had been repealed and therefore made no offer of it in evidence.

But following the statements in the petition which set forth the supposed ordinance and facts constituting a breach of its requirements is another paragraph in which, without reference to the ordinance, it is said that the defendant then and there "negligently and wrongfully ran its train . . . at a great and unlawful speed, to-wit, at a rate of speed greater than six miles an hour and greater than fifteen miles an hour."

Perhaps if the pleader when he drafted the petition had known that he could place no reliance on the ordinance he would have worded this other clause so as to leave it less liable to doubt that it was intended to state a case of common-law negligence in the matter of the speed of the locomotive. But we think it is sufficient as it is, taken in connection with what follows describing the situation. To say that the defendant negligently ran the train at a speed greater than fifteen miles an hour and in that connection to state the conditions then and there existing, which are such as to suggest the degree of care that ought to be exercised, is equivalent to saying that the running of the train at that rate of speed, under those conditions, was negligence.

This ruling is not inconsistent with what was said in McManamee v. Railroad, 135 Mo. 447; Chitty v. Rail-

road, 148 Mo. 74; or Cole v. Armour, 154 Mo. 351, to which we are cited. In those cases it was said that a plaintiff cannot sue on one cause of action and recover on another, and that we say now. And in the McManamee case we said that when the plaintiff makes the general averment that the injury was caused by the negligence of the defendant, and follows that averment by averments of specific acts constituting negligence, the petition will be construed to mean that the negligence charged in the general averment was that which was constituted by the specific acts pleaded and the plaintiff could not recover on proof of other acts constituting negligence not pleaded. That is the law. But in the case at bar the charge of common-law negligence does not rest on an averment of negligence followed by specifications of facts constituting a violation of the ordinance, but, after the pleader has done with the supposed ordinance and the facts alleged constituting its breach, in a new paragraph he charges that the defendant negligently ran its train at a great and unlawful speed and followed that charge with specifications of facts going to show the negligence without reference to the ordinance; we hold, therefore, that the petition charges common-law negligence.

If the supposed ordinance had been in existence the plaintiff would have had the right to plead it as he did and to plead also that the train was running at a rate of speed which, under the circumstances, amounted to negligence at common law, because the facts stated as constituting a violation of the ordinance might be true and those stated as constituting conmmon-law negligence might also be true. Several acts of negligence of the same nature, and all of which may be true and either of which or all of which together may have caused the accident, may be pleaded in one count.

II. It is the duty of a railroad company running its train through a street of a populous city to use ord-

Haley v. Railroad.

inary care to regulate the speed of the train so as not to injure anyone, and failure to use such care is negligence at common law. In the absence of a statute or ordinance on the subject, the question of whether or not a given rate of speed is negligence is, ordinarily, one of fact, not of law, and it depends on the conditions surrounding the act. A rate of speed that would be entirely safe under some conditions would be recklessly dangerous under other conditions. In the case at bar the evidence tended to show that the train was running eighteen or twenty miles an hour. If that was all there was to sustain the charge of negligence in the matter of speed it would not be sufficient to raise the question and the court would not submit it to the jury. But in addition to that fact the evidence tended to show that the train, consisting of twenty or more freight cars, propelled by two engines, one in the rear and one in front, came through the curve into the street at a point where the street was so narrow that the train could not pass the wagon without striking it and where, it being a public street, a wagon of that kind was liable to be and therefore to be expected, and that the speed at which the train was running was such as that the plaintiff did not have reasonable time in which to drive out of danger and such as to render it doubtful if the engineer on the front engine could, by the exercise of ordinary care, have stopped it in time to have avoided the collision after he discovered the danger. Under those conditions it became the duty of the court to submit to the jury the question whether or not it was negligence to run the train at that rate of speed. If the grade was such that the train could not ascend it without the aid of the momentum to be acquired by a high rate of speed that fact would not justify the defendant in running its train at such speed, if to do so rendered it liable to kill or cripple people who, without negligence on their part, were liable to be on the street, or if to do so rendered it impossible for the engineer to

stop in time to avert such an accident after he should come in view of the danger. In such case there should be a watchman or watchmen stationed and the engineer should wait until the watchman signaled him to come and the watchman should be sure the street was clear before he gave the signal.

The petition charged that the defendant was negligent in the matter of speed and it also charged that the defendant negligently failed to stop the train in time to avoid the collision after the danger was apparent. These two charges are not necessarily inconsistent, because they might both be true, that is, the train might have been moving at a rate of speed that under the circumstances was negligent and yet it might be that the engineer could have stopped it in time to have avoided the accident by the use of ordinary care. But the defendant would not be liable, under what we call the humanitarian doctrine, if the speed of the train was such as to render it impossible for the engineer by the exercise of ordinary care to have stopped it in time, although the speed may have been negligent. Therefore, whilst it is negligence to run a train into a place where danger of collision is to be expected at such a rate of speed that it could not be quickly stopped on appearance of danger, still it cannot be said that the defendant is liable for failing to stop the train after discovering the peril if in fact the speed was such that the engineer could not stop it.

Appellant insists that the evidence shows that the respondent was guilty of contributory negligence. Respondent was familiar with the locality; he said that he had been there a thousand times. That may have been a hyperbole, but it justifies the conclusion that he knew he was liable to encounter a train in that street and that the street was so narrow he could not pass a train with his wagon; under those circumstances the law imposed on him the duty of exercising a degree of care com-

mensurate with the danger to be expected. But knowledge of the danger did not render it negligence *per se* for respondent to drive his wagon in the street. There are many streets in a great city in which driving in any kind of a vehicle is attended with well-known danger, yet that fact does not place one who attempts to do so entirely beyond redress if he is injured by the negligence of another while he himself is using the care that the dangerous conditions demand. Did this plaintiff in driving into that street exercise that degree of care that a man of ordinary prudence under like circimstances and knowing the danger that was to be apprehended, would have exercised?

Before driving out of the alley, he said, he stopped and listened for a train but heard none. He said that on the east side of the alley was a board fence nine feet high. That fence, however, would seemingly not have obstructed his east view if his estimate of its height and that of the driver's seat on the wagon was correct. But he testified that when he drove out of the alley he looked each way for a train and none was in sight, that then he drove in a south-east direction across the railroad track to the south side of the street to a point twenty-five or thirty feet east of the alley, then he heard the whistle and immediately thereafter the engine came in sight coming around the curve into the street. He said he was then too close to the curbstone to cross it without first swinging his wagon out and then turning in and he could not turn south into Main street for the same reason, therefore in the emergency he decided that his only way of escape was into Main street on the north, and this he attempted with all his might but unfortunately did not entirely succeed.

Gratiot street is several squares south of Poplar street; that is a whistling point for trains coming as this was. Plaintiff testified that on former occasions he had heard the whistle of trains at Gratiot street but

that he heard none there on this occasion. The mail carrier testified that he heard the whistle of this train at Gratiot street and that when the whistle sounded the watchman came out of his watch-house, which was at the south sidewalk of Poplar street a few feet east of Main street, and crossed over to the north side of the track waiving a white flag and that he was there when the plaintiff drove out of the alley. Plaintiff testified that he did not see the watchman until after he had driven across the street. There was a vacant lot across the street into which the plaintiff might have driven if he had seen the train when he first emerged from the alley, but after he had driven to the south side of the street and to a point twenty-five or thirty feet east of the alley he could not have reached the vacant lot without turning his wagon around, and that he said he could not do so quickly as he could drive northeast into Main street.

The trial court could not under this evidence have said as a matter of law that the plaintiff was guilty of contributory negligence. Whether or not he was was a question for the jury. The trial court was right in setting aside the nonsuit. The judgment is affirmed.

*Brace, C. J., Gantt* and *Lamm, JJ.,* concur; *Burgess* and *Fox, JJ.,* concur in the result; *Graves, J.,* dissents.