FLOYD E. CREWS and ETHEL CREWS, Appellants, v. FRANCIS M. WILSON and FRED W. FLEMING, Receivers of Kansas City Railways Company.

Division Two, February 26, 1926.

1. **INSTRUCTION**: Credibility of Witnesses. The usual instruction on the credibility of witnesses, often approved by this court, telling the jury, among other things, that "if you believe that any witness is honestly mistaken as to any material fact about which such witness gave testimony, you are at liberty to disregard that part of such witness's testimony," but "if you believe that any witness has wilfully sworn falsely regarding some material fact about which such witness gave testimony, you are at liberty to disregard and disbelieve that part of such witness's testimony, or the whole of such witness's testimony," is again approved; and the witnesses for both plaintiff and defendant being interested, and their testimony being contradictory on the very issue to be decided by the jury, the giving of such an instruction is not error, but proper.

2. ————: Negligence: Car under Control: Contradictory of Humanitarian Theory: Inconsistent Theories. Different acts of negligence which are consistent with each other may be united in the same petition, or the same count of the petition, but two separate and inconsistent theories cannot be submitted to the jury. An allegation that defendants' servants, in charge of the street car which struck and killed plaintiffs' six-year-old son as he was attempting to cross a public street, saw, or by the exercise of ordinary care could have seen him coming into or in a perilous position in front of the car, while oblivious of its approach, in time, by ordinary care, to have stopped said car and avoided injuring him, but carelessly and negligently failed to do so, in legal effect charges that the car was under control, but the motorman negligently failed to use the

means at hand to stop the car in time to avoid the injury, and must be taken against plaintiffs as true, and therefore the court did not err in refusing to instruct the jury that if they found from the evidence that defendants' employees approached the street crossing "without having said car under control, and if you further find it was negligent to run said car at said time and place without having the same under control, you will find the issues for the plaintiffs;" and especially so, where the court had already, at plaintiffs' request, given an instruction on the humanitarian doctrine, which was the only theory, in view of the evidence, upon which the case could have been submitted to the jury.

3. ———: **Under Control: Equivalent to Excessive Speed.** If "under control" is a better term than "excessive speed" the petition should neverthless contain allegations of excessive speed, and not simply allegations which in legal effect state that the car was under control, or at least the instructions should ask that the words "under control" are to be taken and understood as meaning excessive speed.

4. ———: **Following Language of Petition: Inconsistent with Others.** An instruction for defendant which follows the language of the petition is not error, and if inconsistent with one given for plaintiff on the same subject plaintiff's should not have been given and the error is one of which he cannot complain.

Appeal and Error, 4 C. J., Section 2619, p. 708, n. 21. Pleading, 31 Cyc., p. 120, n. 87. Trial, 38 Cyc., p. 1724, n. 93; p. 1734, n. 16; p. 1736, n. 28 New.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

Affirmed.

*Swearingen & Finnell* for appellants.

(1) The court erred in giving Instruction 2 at the request of defendants. (a) This court has often held that where there is no evidence upon which to base this instruction it is error to give it. Keeline v. Sealy, 257 Mo. 498; Schmidt v. Railroad, 149 Mo. 289; Lass v. Rys. Co., 233 S. W. 70; Sampson v. Railroad, 156 Mo. App. 419; Wyatt v. Central Coal Co., 209 S. W. 585; Hill v. Dillon,

176 Mo. App. 192. (b) The instruction is vicious. If error can be greater in one instance than in another, we would say that this instruction was the climax. Plaintiffs had no "interested" witness except to facts that were conceded to be true. Neither of the plaintiffs saw the accident. None of plaintiff's witnesses were shown to have been moved by any "relation to or feeling for or against plaintiffs or defendants." None was related to plaintiffs or interested in their recovery beyond the interest of the every-day individual to speak the truth concerning matters in question. (2) The court erred in refusing plaintiff's Instruction 7. (a) As many causes of action as are consistent therewith may be submitted with a humanitarian case. Foster v. Rys. Co., 235 S. W. 1070; DeRousse v. West, 198 Mo. App. 293; Dunn v. Rys. Co., 204 S. W. 592; Haley v. Railroad, 197 Mo. 15. Plaintiffs may submit the humanitarian doctrine in one instruction and any other theory of the case pleaded and proved in another. Taylor v. St. Ry., 256 Mo. 210. The operatives of street cars and other dangerous agencies must be governed by the circumstances that surround them at the various places along the line. Freie v. Ry. Co., 241 S. W. 671; Heinzle v. Railway, 182 Mo. 558. (b) The instruction did not say that it was negligent for this motorman not to come down under control; it didn't say that he came down without having his car under cntrol, but it follows the rule. It says to the jury, if you believe from the evidence that the motorman came down to the place where Jack Crews was killed without having his car under control, and if you believe it was negligent to do so, and if you find that this negligence was the cause of his death, then you will find the issues for the plaintiffs, and this is the law. Stauffer v. Railroad, 243 Mo. 336; Central Railroad v. Young, 200 Fed. 359; Gt. Northern v. Hooker, 170 Fed. 154; Moore v. Street Ry., 142 Mo. App. 294; Harrington v. Dunham, 273 Mo. l. c. 431; Cole v. Met., 121 Mo. App. 609; Freie v. Railroad, 241 S. W. 671; Benton v. St. Louis, 248 N. W. 98; Greer v. Railroad, 173 Mo. App. 276; Stewart v. St. Ry. Co., 188 S. W. 200. (c) "Under control" is a well-

understood phrase, and especially by railroad and automobile people. Freie v. Railroad, 241 S. W. 671; Torantolla v. Rys. Co., 226 S. W. 617; Heinzle v. Railway, 182 Mo. 558; Stauffer v. Railroad, 243 Mo. 336. The plaintiffs have a right to have the jury pass on the question whether it was negligent for the motorman to come west on Forty-Third Street with the car not under control. Benton v. St. Louis, 248 N. W. 98; Greer v. Railroad, 173 Mo. App. 276; Stewart v. St. Ry. Co., 188 S. W. 200; Harrington v. Dunham, 273 Mo. 414; Foster v. Rys. Co., 235 S. W. 1070. (d) This car could have been stopped after Jack was knocked down and before the wheels cut him up. Spencer v. Transit Co., 222 Mo. 310; Hill v. Harvey, 201 S. W. 535; Heinzle v. St. Ry. Co., 213 Mo. 102.

*Charles N. Sadler* and *Ben L. White* for respondents.

(1) Instruction 2-d, given at the request of the de-defendants was proper. There was abundant evidence on which to base it. Lass v. Rys. Co., 233 S. W. 71; Hinton v. Railroad Co., 106 S. W. 396; Pelster v. Shamrod Boiler Co., 268 S. W. 892. (2) Instruction 7, requested by plaintiffs, was properly refused. (a) The allegation is too general and comprehensive, too lacking in any specification of what is meant by the clause "negligently and carelessly failed to stop." Applegate v. Railroad, 252 Mo. 173; McNanamee v. Ry., 135 Mo. 447; Waldhier v. Railroad, 71 Mo. 515. (b) But if said allegation be held an averment of specific negligence, then, it is squarely in conflict with the predication of the humanitarian doctrine.

RAILEY, C.— On April 16, 1921, the plaintiffs, Floyd E. Crews and Ethel Crews, filed in the Circuit Court of Jackson County, Missouri, their action for damages against the Kansas City Railway Company, and its receivers, on account of the killing of their six-year-old son in said city on March 22, 1921, by said railway company.

(1) The petition in substance charges that about 7:45 o'clock A. M. on March 22, 1921, while plaintiffs' son,

Jack Crews, was walking across 43rd Street in said city, from south to north, at a point about sixty feet east of the east line of Main Street, in said city, defendants' servants in charge of defendants'. east-bound car carelessly and negligently ran said car against and over said Jack Crews and killed him; that the servants of defendants in charge of said car saw, or by the exercise of ordinary care could have seen, Jack Crews coming into a perilous position, and in a perilous position, oblivious of the approach of said car, in time, by the use of ordinary care and caution, with due regard to the safety of the people on said car, to have stopped said car and avoided injuring plaintiffs' son, and negligently failed to do so.

(2)  It is further alleged that said car was equipped with a bell or gong, to warn people of danger, and that the motorman in charge of said car negligently failed to sound said gong for the purpose of informing Jack Crews of the approach of said car.

(3)  It charges that defendants were guilty of negligence in failing to have the car under control which killed plaintiffs' son, and that he was killed by reason thereof.

(4)  It is averred that by reason of the foregoing acts of negligence, plaintiffs' son was run over and killed as aforesaid, and for which they seek to recover $10,000 as damages, etc.

The answer was a general denial.

The case was tried before a jury, and on November 16, 1922, a verdict was returned in favor of defendants. Judgment was entered in due form on the verdict aforesaid. Plaintiffs, in due time, filed a motion for a new trial, which was overruled, and the cause appealed by them to this court.

It appears from the evidence, that on the morning of March 22, 1921, plaintiff Ethel Crews sent her daughter, Evelyn, then about eight years old, and her son, Jack Crews, then about six years old, on an errand to get some cookies. In order to do this errand, it was necessary for the children to cross 43rd Street, near its intersection

with Main Street in Kansas City, Missouri. Forty-third Street runs east and west and Main Street north and south. Each of said streets has double-track street-car lines with appropriate switches and cross-overs. The above switches and cross-overs were what are commonly called spring or plug switches, and were not electrical switches. The Rockhill-Independence Avenue street cars move north and south on Main Street, and east and west on 43rd Street, reaching the one or the other by the switches mentioned, at their intersection at 43rd and Main. As the cars move west on 43rd Street, they make regular passenger stops from ten to fourteen feet east of Main. The first street east of Main is Walnut Street, which runs north and south. The block between Main and Walnut is about 250 feet long. From Walnut to Main there is a slight down grade. The switch-point of the west-bound track on 43rd Street is about seventy or seventy-five feet east of Main Street. It is not an electrical switch-point, but a spring or plug. When two cars are meeting—one east-bound on the south track and the other west-bound on the north track—the west-bound car, approaching the switch-point, is required to slow down until the rear trucks pass said switch-point—this, to guard against a possible split switch. The width of each track is four feet and eight inches; and the width or space between the east-bound and west-bound tracks is five feet. The distance from the south curb of 43rd Street, to the south rail of the north or west-bound track is about twenty-three feet. The street structure, on either side of the rails on 43rd Street, consists of cobble-stones, which are rough and coarse, some being about an inch or an inch and a half above the top of the rails.

When Evelyn and Jack Crews reached the south curb on 43rd Street, a car was moving east-bound on the south track and another moving west-bound on the north track. The motorman on the west-bound car was sounding his gong and slowing down to about six miles per hour. The east-bound car had completely rounded the curve or switch and was moving directly east and passing in front

of said children.  Evelyn had hold of Jack's hand when they reached the curb and they stopped to let the car pass, but suddenly Jack broke away from his sister and ran as fast as he could immediately behind the east-bound car and directly in front of the west-bound car.  At this time, the cars had passed the switch-points and were according-ly moving with the usual speed, the west-bound car travel-ing eight or ten miles per hour.  The evidence discloses that deceased ran directly within two or three feet behind the east-bound car.  He was there and within about a foot or eighteen inches south of the north rail of the east-bound track when the motorman first saw him.  He was then from five to seven feet south of the west-bound car and two or three feet west of its front.  The motorman was keeping a lookout for pedestrians.  The instant the motor-man saw deceased, he stepped on the sand, pulled the reverse lever, and notched two points on the controller.  This was the quickest possible way to make an emergency stop, and he made the stop within about fifty feet.  The deceased was struck by the fender and front part of the car, being under it, and killed.

A stop within fifteen to twenty-five feet was shown by the evidence to be a good one.

Such other matters as may be deemed important will be considered later.

I.  The court is charged with error in giving Instruc-tion 2-d, at the instance of defendants.  It reads as fol-lows:

"2-d.  The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony.

"In determining the credit you will give to a witness and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives actuating the witness in testifying, the witness's relation to or feel-

*Credibility of Witnesses.*

ing for or against plaintiffs or defendants, the probability or improbability of the witness's statements, the opportunity the witness had to observe and to be informed as to matters respecting which the witness gave testimony, the inclination of the witness to speak truthfully or otherwise regarding matters within the knowledge of such witness.

"If you believe that any witness is honestly mistaken as to any material fact about which such witness gave testimony, you are at liberty to disregard that part of such witness's testimony. But if you believe that any witness has wilfully sworn falsely regarding some material fact about which such witness gave testimony, you are at liberty to disregard and disbelieve that part of such witness's testimony, or the whole of such witness's testimony.

"All these matters being taken into account with all the facts and circumstances given in evidence, it is your province to give each witness such credit and the testimony of each witness such weight and value as you may deem proper."

The above instruction, in substance, has received the approval of this court running through a period of seventy years, in many decisions, some of which are as follows: State v. Mix, 15 Mo. l. c. 159; Gillett v. Wimer, 23 Mo. l. c. 78; State v. Dwire, 25 Mo. 553; Paulette v. Brown, 40 Mo. l. c. 57; State v. Elkins, 63 Mo. l. c. 166; Brown v. Ry. Co., 66 Mo. l. c. 600; State v. Patrick, 107 Mo. l. c. 162; McFadin v. Catron, 120 Mo. l. c. 270; State v. Wright, 134 Mo. l. c. 406; State v. Hudspeth, 159 Mo. l. c. 208; State v. Swisher, 186 Mo. l. c. 7; State v. Bond, 191 Mo. l. c. 561; State v. Feeley, 194 Mo. l. c. 323; State v. Shelton, 223 Mo. l. c. 138-9; State v. Barnes, 274 Mo. 625; State v. Marlin, 259 S. W. l. c. 434; State v. Houston, 263 S. W. l. c. 219 and following; State v. Brown, 270 S. W. l. c. 275; State v. Hogan, 273 S. W. l. c. 1062.

There was a sharp conflict between the testimony of plaintiffs and that of defendants as to the distance in which the car could have been stopped, at the time and place of accident. By way of illustration, John R. Glove,

who had formerly worked for defendant company, gave it as his opinion, that the car going six miles an hour could have been stopped instantly; that going ten miles per hour it could have been stopped in two feet. Owen Cockel, the motorman in charge of the car that killed the boy, who was still in the service of defendants, testified that he did everything possible to stop the car and that it then ran fifteen to seventeen feet. George Harder, a witness for defendants, and still in their service, gave it as his opinion, that the car could have been stopped in from twenty to twenty-five feet. Other witnesses, in the employ of defendants, testified to substantially the same facts. It was a question for the jury as to whether some of these witnesses were honestly mistaken, or whether they testified recklessly or falsely in respect to this issue.

There was a sharp conflict between the testimony for plaintiffs and that given in behalf of defendants, as to whether there was a rule of the company requiring motormen to stop cars when approaching a switch point, and meeting a car moving in the opposite direction, etc. The plaintiff Floyd E. Crews, father of deceased, who at one time had been a motorman for the railway company, swore there was such a rule in existence and that it applied to the switch-point or cross-over in controversy. This evidence was directly contradicted by several of defendants' employees. The jury had the right, in weighing the evidence, to take into consideration the fact that Floyd Crews was the father of deceased and an interested witness; and that the testimony of defendants came from men who were still in the service of the road.

Several other matters occurred during the progress of the trial that warranted the court in giving the above instruction. It applied alike to the witnesses for both plaintiffs and defendants, and properly stated the law.

II.   It is contended, that the court erred in refusing plaintiffs' instruction numbered seven. Omitting the formal parts, about which there is no controversy, it reads as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that Jack Crews was struck, knocked down, run over and killed by the car of defendants mentioned in the evidence, . . . and if you further find and believe from the evidence that the defendants' employees in charge of their street cars approached Main Street from Walnut Street *without having said car under control,* and if you further find and believe from the evidence that it was *negligent* to run said car at said time and place *without having the same under control,* and as a direct result thereof said Jack Crews was struck, knocked down, run over and killed by said car, *then you will find the issues for the plaintiffs."* (Italics ours.)

*Car under Control: Inconsistent Theories.*

The petition, among other things, charges in substance, that defendants' servants in charge of said car, saw, or by ordinary care could have seen, plaintiffs' son coming into and in a perilous position in front of said car, while oblivious of its approach, in time, by ordinary care, to have stopped said car and avoided injuring plaintiffs' said son, but carelessly and negligently failed to do so. This averment of the petition, which must be taken as true against plaintiffs, charges in legal effect, that the car was under control, but the motorman was guilty of negligence in failing to use the means at hand to stop the car in time to avoid the accident. This theory of the humanitarian rule of law was fully submitted to the jury by plaintiffs' Instruction One (1), which was complete within itself, and authorized a verdict for plaintiffs, based on the facts therein. The most casual reading of plaintiffs' Instruction One, as given, and Instruction Seven, refused, will indicate that they are inconsistent, and clearly in irreconcilable conflict with each other. If the car was not under control as contemplated in Instruction 7, then how could the motorman by the exercise of ordinary care have stopped the car in time to have saved the life of the child as contemplated in Instruction One, supra? It is true, that different acts of negligence which are consist-

ent with each other, may be united in the same petition, or the same count of petition, but it needs no citation of authority to sustain the position that the trial court cannot legally submit to the jury by instructions two separate and inconsistent theories of negligence. There is some doubt as to whether the plaintiffs were entitled to go to the jury at all in this case, but if they had any meritorious cause of action, it was properly submitted to the jury under the humanitarian rule as contemplated in plaintiffs' instruction numbered one (1), which authorized a recovery within itself, if the facts were found in their favor.

We are informed, by appellants' brief, that "under control" is a much better term than "excessive speed. If a car is not under control it is being run at an excessive speed." If it was the intention of appellants to take the verdict of the jury on the issues as to whether the motorman in charge of said car was guilty of negligence, at the time and place of accident, in running said car at an excessive rate of speed, so that it could not have been stopped in time to avoid the killing of plaintiffs' son, why did they not frame their instruction accordingly, instead of submitting an issue of law to the jury by the use of the words "under control?" [Great Northern Railroad Co. v. Hooker, 170 Fed. 154; Central Railroad Co. v. Young, 200 Fed. 359.] The petition does not charge the defendants with negligence in running the car at an excessive rate of speed and, hence, an issue of that character was not admissible under the pleadings. If counsel for plaintiffs considered that failure to have the car under control, was tantamount to a charge that it was being operated at an excessive rate of speed the instruction should have defined the meaning of "under control," instead of leaving the jury to guess as a matter of law the meaning of said words.

In Great Northern Ry. Co. v. Hooker, 170 Fed. l. c. 159, VANDEVANTER, J., of the Court of Appeals, but now a member of the United States Supreme Court, in discussing "under control," said:

"Moreover, it is held by this court that the reasonableness of such rules is to be determined by the court as a question of law, and not by the jury as a question of fact."

The ruling in the Hooker case was approved by Gray, J., in Central Railroad v. Young, 200 Fed. l. c. 364-5 and appeals to us as being sound when applied to Instruction Seven refused in this case.

Upon a full consideration of the case, we are decidedly of the opinion that plaintiffs were only entitled to go to the jury, if at all, under the humanitarian rule, as submitted under plaintiffs' Instruction One, which was complete within itself, and authorized a verdict for appellants on the facts stated therein. The court committed no error in refusing said Instruction Seven as asked.

III. It is claimed that plaintiffs' Instruction One is in conflict with Instruction Three, given in behalf of defendants.

The petition charges that the motorman saw or could have seen plaintiffs' son "coming into a perilous position and in a perilous position in front of said car" etc. Instruction 3, given for defendants, uses the language, "could have seen plaintiffs' son coming into a perilous position, or already in a perilous position in front of said car," etc. The defendants' instruction numbered three follows the language of the petition and is in proper form. If any error was committed, it was in plaintiffs' Instruction One failing to follow the language of the petition. The above assignment is without merit and overruled.

IV. We have carefully examined and fully considered, all the remaining questions presented in the briefs of counsel. We are of the opinion, that the case was well tried by court and counsel; that no error was committed during the progress of the trial, of which appellants can

legally complain. We accordingly affirm the judgment. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.