Margaret THOMPSON, Respondent,

v.

Evelyn Irene GIPSON, Appellant.

No. 44421.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Price Shoemaker and Elmer E. Reital, St. Joseph, for appellant.

Phil Hauck, Eugene E. Andereck, Russell N. Pickett, Pickett, Pickett & Andereck, Trenton, for respondent.

## HOLLINGSWORTH, Judge.

Plaintiff recovered judgment in the sum of $25,000 for personal injuries sustained when an automobile operated by defendant, in which plaintiff was riding as a guest, collided with another automobile at the junction of U. S. Highway No. 69 and State Highway No. 33 in Clay County, Missouri. Defendant has appealed upon grounds: (1) Plaintiff did not make a submissible case; (2) the instructions submitted inconsistent theories of negligence; and (3) error in instructing on specifically hypothesized humanitarian negligence and on general negligence of defendant in failing to control and in failing to operate her automobile at a careful and prudent rate of speed.

At the point of the collision and for considerable distance on either side thereof, Highway 69 extends in a northeasterly-southwesterly direction and is intersected by Highway 33, which, insofar as here involved, leads southeasterly from Highway 69 a distance of about two miles to Liberty, Missouri. Both highways are paved with concrete. On approaching the intersection, Highway 69 consists of two traffic lanes with an overall width of 20 feet. At and through the intersection Highway 69 is widened for a distance of 678 feet by a 20 foot slab of concrete on the southeast (toward Liberty) side, thereby forming on that side a "Y" approach to and exit-way from Highway 69.

On November 22, 1952, at about 3:30 p. m., plaintiff (the mother of defendant) was riding as a guest in the rear seat of a Studebaker sedan operated by defendant northeastwardly on Highway 69 toward the aforesaid intersection. In the front seat with defendant were defendant's daughter, Betty Meeker, and Betty Meeker's son, Timothy, aged 7. At the same time, Lena J. Bohlig, accompanied by her husband and Woodrow Evans, was operating a Ford coupe southwestwardly on Highway 69 toward said intersection. These automobiles collided as Mrs. Bohlig was making a left turn into Highway 33, for the purpose of going to Liberty. The collision occurred at the longitudinal center line of the 20 foot slab lying adjacent to the regular 20 foot in width pavement of Highway 69. Plaintiff sustained severe injuries. The weather was clear, the pavement dry. There were no other cars on either highway near that point. The vision of both parties was unobstructed, although there was a "dip" in Highway 69 just southwest of the intersection.

Defendant was familiar with the intersection, having passed along it every two weeks for a period of 27 months. As an automobile operator travelling on Highway 69 approaches the intersection from the southwest (as did defendant), there is a plainly visible highway sign adjacent to the right side of the highway 920 feet from the point of the collision reading "Slow 40 Miles"; 850 feet from said point there is a sign reading "Jct. 69–33", with directional arrows thereon; 760 feet from said point is a sign reading "Cross Road".

The practically uncontradicted testimony, including that of defendant, tended to show as follows:

As defendant approached the intersection, she was travelling at 50 to 55 miles per hour. At the point of the collision she was travelling 45 to 50 miles per hour. She made only a slight application of the brakes at any time prior to the collision. The Bohlig car was travelling about 10 miles per hour or less as it turned to the left from Highway 69 to Highway 33. (Mrs. Bohlig, who did not see defendant's car until it was two car lengths from her car, and whose idea of speed and distances was vague, estimated the speed of defendant's car at 75 miles per hour. Neither of the parties seem to accept this estimate as being of any evidentiary value.)

Betty Meeker, who, as stated, was riding in the front seat with defendant, testified: When she first saw the Bohlig car it was at least two blocks away. It was then "in the act of turning". She also testified that defendant must have seen it at the same time, because she excitedly said, "Looks like they are going to turn right in front of me * * *, she is coming into our lane." Witness and defendant were confused as to what course the Bohlig car was eventually going to take. At some point, witness did not know exactly where, defendant began to turn gradually to her right in an effort to avoid the Bohlig car. After first seeing the Bohlig car two blocks away, defendant may not have begun to turn her car to the right until she had gone more than a "city block". There were no obstructions to prevent defendant from going behind (to the left of) the Bohlig car.

On cross-examination, Betty Meeker testified: "I first saw the Bohlig car about the same time she (defendant) did, I believe. It wasn't started to turn * * *."

There was other testimony tending to show that had defendant continued in her own proper lane of travel there would have been no collision. Defendant's car was in good mechanical condition and was equipped with a horn, but she sounded no warning.

At the request of plaintiff and over the objection of defendant, the trial court gave three verdict-directing instructions in behalf of plaintiff, to wit:

Instruction No. 2 directed a verdict for plaintiff if the jury found that "defendant's automobile was caused to collide with the Bohlig automobile through the negligence and failure of the defendant to properly control and operate said automobile at said time and place."

Instruction No. 3 directed a verdict for plaintiff if the jury found that "defendant's automobile was caused to collide with the Bohlig automobile through the negligence and failure of the defendant to operate said automobile at said time and place, at a rate of speed which was careful and prudent."

Instruction No. 4 submitted a finding for plaintiff under the humanitarian doctrine if the jury found "defendant's automobile was caused to collide with the Bohlig automobile by reason of negligence and failure of the defendant to stop her vehicle, or swerve it to the left of the point of collision, or to sound her horn or give other warning (if you find she could have so acted with safety to herself, her vehicle, and other persons or property on such highway), after she saw or by the exercise of the highest degree of care on her part could have seen the Bohlig automobile in a position of imminent peril of being collided with by the automobile in which plaintiff was riding."

It will develop in the course of this opinion that this case is to be reversed and remanded because of certain errors assigned by defendant. But this opinion should not be construed as otherwise approving some of the instructions given herein. We here observe, for whatever benefit it may be to the parties, that the technical difficulties in preparing instructions in cases wherein both primary and humanitarian negligence are submitted are many. For example, this is true with reference to a "sudden emergency" instruction, such as was given in this case at the instance of defendant. See Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254, 258; Green v. Guynes, Mo.Sup., 235 S.W.2d 298, 304. It is also true as to "sole cause" instructions. Godfrey v. Bauer, Mo.Sup., 252 S.W.2d 281, 285; Johnson v. Cox, Mo.Sup., 262 S.W. 2d 13, 15.

 Defendant contends that no case was made on excessive speed, because, she says, the evidence shows that the proximate cause of the collision was the left turn made by the Bohlig car across the path of defendant's car at a time when defendant's car was so close that defendant, in the exercise of the highest degree of care, was unable to stop or turn around the Bohlig car.

We are convinced that defendant errs in so contending. Here was an intersection with which defendant was thoroughly familiar. It was well marked with caution signs. She was bound to know that other vehicles were likely to cross her lane of travel, either from Highway 33 or in turning left into Highway 33 from Highway 69, as did the Bohlig car. The law required her to exercise the highest degree of care for the safety of her passenger, plaintiff herein, and others at the intersection. Surely, the jury could reasonably find that, confronted with a warning sign of a 40 miles speed zone and with full knowledge of the intersection, it was negligence on her part to enter it at a speed of 50 to 55 miles per hour and to thereafter continue into and through it to the point of collision without any appreciable reduction. Neither

do we have any hesitancy in holding that the jury could reasonably find that had her speed been reduced to 40 miles per hour or less as she entered the intersection the collision would have been avoided; especially is this true when considered in connection with the admitted fact that she turned to the right beyond her own traffic lane and into the path of the Bohlig car.

Defendant also contends that no submissible case of humanitarian negligence was made because the evidence failed to show: (1) when plaintiff came into a position of imminent peril (this assertion is at war with one of defendant's premises of error in submitting excessive speed); or (2) defendant's ability to stop, swerve to her left or give warning to the driver of the Bohlig car.

As we understand defendant's brief, she does not contend that the facts shown in evidence establish as a matter of law that plaintiff has no right to recover under the humanitarian doctrine. She merely insists that, in failing to show when and where the cars came into imminent peril of collision and defendant's ability thereafter to stop, swerve or sound a warning and thereby avert a collision, plaintiff did not make a submissible case under that doctrine. Inasmuch as the case is to be remanded for a new trial, at which the evidence may more definitely establish whether a submissible case exists under the humanitarian doctrine, we need not here further consider this assignment.

 Defendant contends that it was error to submit an issue of her negligence under the humanitarian doctrine, as hypothesized in Instruction No. 4, and an issue of her antecedent or primary negligence by reason of "failure of the defendant to properly control and operate [her] automobile at said time and place", as hypothesized in Instruction No. 2.

It is not error to submit both primary and humanitarian negligence provided the submissions are not contradictory and inconsistent and there is evidence to support both. Haley v. Missouri Pacific Ry. Co.,

197 Mo. 15, 93 S.W. 1120, 1122; State ex rel. Tunget v. Shain, 340 Mo. 434, 101 S.W. 2d 1, 3; Hillis v. Rice, Mo.App., 151 S.W. 2d 717, 719–722. But it is error to submit contradictory, inconsistent and self-destructive theories of recovery. State ex rel. Tunget v. Shain, supra; Crews v. Wilson, 312 Mo. 643, 281 S.W. 44, 46. In the latter case, this court had before it the precise question here under consideration. In that case, the trial court, at the instance of plaintiffs, submitted defendant's humanitarian negligence under Instruction 1. Upon appeal, following an adverse judgment, plaintiffs contended that the trial court had erred in refusing their proffered Instruction 7, which hypothesized negligence of defendant in approaching the point of the collision "without having said (street) car under control." We there said, 281 S.W. loc. cit. 46: "This theory of the humanitarian rule of law, was fully submitted to the jury by plaintiffs' instruction 1, which was complete within itself, and authorized a verdict for plaintiffs, based on the facts therein. The most casual reading of plaintiffs' instruction 1, as given, and instruction 7, refused, will indicate that they are inconsistent, and clearly in irreconcilable conflict with each other. If the car was not under control as contemplated in instruction 7, then how could the motorman by the exercise of ordinary care have stopped the car in time to have saved the life of the child as contemplated in instruction 1 supra? It is true that different acts of negligence which are consistent with each other may be united in the same petition, or the same count of petition, but it needs no citation of authority to sustain the position that the trial court cannot legally submit to the jury, by instructions, two separate and inconsistent theories of negligence." We hold that the trial court erred in giving Instruction No. 2 in conjunction with Instruction No. 4.

Defendant further contends that Instructions Nos. 2 and 3 are based upon general negligence and that it was error to give them in conjunction with Instruction No. 4, which hypothesized specific negligence under the humanitarian doctrine. It is error to give a verdict-directing instruction based upon general negligence and in the same action to give a verdict-directing instruction based upon specific negligence. State ex rel. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422; Fuller v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 675, 678 [3–4]; Jarboe v. Kansas City Public Service Co., 359 Mo. 8, 220 S.W.2d 27, 32 [14, 15]; Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W. 2d 59, 63 [3]. Unquestionably, Instruction No. 2, which as stated, submitted defendant's negligent failure "to properly control and operate [her] car at said time and place", is a mere hypothesization of general negligence. See State ex rel. Burger v. Trimble, supra. It specifies no act or omission of defendant, but leaves to the jury the province of determining defendant's negligence by whatever act done or omitted to be done that, in its imagination, it may conceive. On the other hand, plaintiff's Instruction No. 4 hypothesizes specific negligence of defendant in failing to stop, swerve to the left or sound a warning. We hold that the court erred in giving Instruction No. 2 in conjunction with Instruction No. 4.

In view of our conclusion that Instruction No. 2 embodied a submission of general negligence only and should not have been given in conjunction with Instruction No. 4 submitting specific humanitarian negligence, we need not here undertake to determine whether Instruction No. 3 constituted a sufficient submission of specific negligence of defendant in operating her car at an excessive rate of speed under the undisputed facts and circumstances shown in evidence.

▇▇▇ We have not overlooked plaintiff's insistence that defendant waived any error in the submission of her case under instructions hypothesizing both general and specific negligence by voluntarily joining in such submission in requesting and having the trial court give her Instructions E and F. The contention is without merit. In

the first place, the record does not confirm plaintiff's assertion that defendant voluntarily joined in any submission. At the close of the evidence, defendant moved for a directed verdict upon the ground there was no submissible case made against defendant, which motion was overruled. The record then shows that defendant sufficiently objected and saved her exceptions to each and every instruction given in behalf of plaintiff. See Section 510.210 RSMo 1949, V.A.M.S. It was then, and in that state of the record, that defendant's instructions were given. Under such circumstances, defendant cannot be said to have voluntarily joined in the submission complained of. McGrew v. Thompson, 353 Mo. 856, 184 S.W.2d 994, 998 [9]; Kelly v. Lahey, Mo.App., 232 S.W.2d 177, 180. In the second place, Instructions E and F, however erroneous they may have been in ignoring the issue of defendant's antecedent negligently excessive speed, in no way or manner join in or waive the above discussed errors in plaintiff's instructions. Instruction E undertakes to hypothesize a negative finding of certain specific negligence on the part of defendant and a finding that the negligence of Mrs. Bohlig was the sole cause of the collision. Instruction F is a converse of plaintiff's humanitarian Instruction No. 4. (It seems, however, to ignore the issue of defendant's primary negligence in operating her car at an excessive speed, by directing a verdict for defendant if the jury should find no negligence on the part of defendant after the Bohlig car came into a position of peril.)

And, finally, we think it extremely doubtful that humanitarian negligence, in its true sense, is applicable to the facts in this case. It is tacitly admitted that plaintiff is not chargeable with any negligence, and it is difficult, therefore, to see how or in what manner plaintiff, as defendant's guest, could come into a position of peril other than through the antecedent negligence of defendant or Mrs. Bohlig, or both of them. Consequently, it seems clear that, as to her passenger, defendant's negligence,

if any, was primary rather than humanitarian.

For the reasons stated, the judgment is reversed and the cause remanded.

All concur.