Palma WELCOME, Plaintiff-Appellant,

v.

Bernice BRAUN, Guardian ad litem of Kenneth Philip Braun, a Minor, Defendant-Respondent.

No. 46592.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 12, 1959.

Haley & Fredrickson, St. Louis, for appellant.

Harry L. Bell, St. Louis, for respondent.

HOLMAN, Commissioner.

In this action plaintiff, Palma Welcome, sought damages in the sum of $35,000 for injuries received when her car was struck by an automobile driven by defendant Kenneth Philip Braun. The verdict of the jury was for the defendant. Plaintiff has appealed from the ensuing judgment and here contends that the court erred in giving Instructions Nos. 3 and 4 at the request of the defendant.

The collision in question occurred at the intersection of Gravois Road and Heege Avenue in St. Louis County, Missouri, at about 1 a. m. on January 1, 1956. Heege Avenue is about 34 feet wide and runs generally east and west. Gravois is a heavily traveled north-south road approximately 56 feet wide. Plaintiff and her 16-year-old son had spent New Year's Eve at the home of their minister and had started home about five minutes before the collision. She drove east on Heege to Gravois and intended to turn left on Gravois.

Defendant was home on leave from the Navy. He had spent the latter part of the evening visiting with friends in St. Louis where he had drunk two glasses of beer. At the time of the instant occurrence he was on his way home and was driving south on Gravois.

There was a red flasher light at the intersection for traffic on Heege and an amber flasher to warn traffic on Gravois. There was also a boulevard stop sign for eastbound traffic entering Gravois from Heege. Commercial buildings on the northwest corner of the intersection restricted, to some extent, the view of the respective parties as their vehicles approached the intersection. Plaintiff testified that she brought her car to a complete stop before entering Gravois; that she stopped at a crosswalk about 12 feet back from the curb line of Gravois and looked to the left and could see approximately one block, and also looked to the right but saw no vehicle coming from either direction; that she then proceeded into Gravois and the front end of her car was about the center of the street when defendant's car struck the left rear of her car. She stated that at two or three m. p. h. she could stop her car almost instantly, and at seven m. p. h. it would "take a little longer."

Plaintiff never saw defendant's car before the collision. Her son did not see it until it was "right on top of us." Plaintiff's son also testified that from the time plaintiff's car moved from its stopped position to the point of impact, the speed of her car was gradually accelerated to about seven or eight m. p. h.

Defendant stated that he was driving at a speed of approximately 30 m. p. h. but reduced his speed to 20 or 25 m. p. h. as he approached Heege; that he was keeping a lookout and first saw plaintiff's car when it was about five feet off Gravois on Heege, at which time it was going about 15 to 18 m. p. h.; that he swerved to the right and tried to avoid a collision but was unable to do so.

The speed limit on Gravois at that point was 30 m. p. h. There was evidence that defendant's car left skid marks for 135 feet before reaching the point of impact. There was expert testimony based on the length of the skid marks and other physical facts to the effect that defendant's car would have had to have been going about 60 m. p. h. at the time the brakes were applied. The verdict-directing instruction offered by plaintiff predicated defendant's liability upon a finding that "defendant was driving his automobile at a rate of speed in excess of thirty (30) miles per hour and that such was a high and excessive rate of speed under the circumstances then and there existing."

The first point briefed by plaintiff is the contention that the court erred in giving Instruction No. 4 at the request of defendant. That instruction reads as follows:

"The Court instructs the jury that if you find and believe that plaintiff was driving the Pontiac automobile, then under the law, she was bound to exercise the highest degree of care in keeping a lookout ahead and laterally as she proceeded eastwardly along Heege Road.

"The Court further instructs you that if you find and believe from the evidence that plaintiff brought her automobile to a stop so that the front end of said automobile was at or near the west line of the Heege Road crosswalk mentioned in the evidence and that plaintiff's view to the north was partially blocked, and that thereafter plaintiff started up her automobile and proceeded toward and into Gravois, and that *after plaintiff started up her automobile she could have seen the approaching automobile of the defendant if she had looked to the north, but that she failed so to do, and if you further find that plaintiff could have realized that there was danger of a collision if she had looked and seen the approaching automobile of defendant and could have brought her automobile to a stop before going into the path of defendant's approaching automobile,* and if you further find that such acts and failure was negligence, and that such negligence directly caused or directly contributed in any degree to the collision, then, in that event, the Court instructs you that plaintiff was contributorily negligent and she cannot recover against the defendant and your verdict should be in favor of the defendant, and this is true even though you may find that the defendant was negligent as set out in other instructions herein."

Plaintiff says the instruction was erroneous because "it placed upon plaintiff the absolute duty of looking and seeing the approaching automobile of defendant, of realizing there was danger of collision and of bringing her automobile to a stop before going into the path of defendant's automobile, whereas, the law only required her to exercise the highest degree of care, to look and see, and thereafter stop." In support of that contention she cites the case of Toburen v. Carter, Mo.Sup., 273 S.W.2d 161, 163, wherein the contributory negligence of the guest-plaintiff was hypothesized as follows: " 'that plaintiff rode in her husband's automobile south on Main

Street and from 36th Street up to the point of accident that the automobile in which the plaintiff was seated was travelling about ten feet behind defendant's automobile, * * *, and * * * that the plaintiff could have seen and known of the position of the automobile in which she was seated as aforesaid and thereafter could have warned her husband to slow up his automobile and increase the distance between the two cars * * *'."

In ruling that instruction prejudicially erroneous, we said: "This portion of the instruction unquestionably places upon plaintiff the absolute duty of seeing and knowing what she *could* have seen and known; a higher duty than that of the operator, which is to exercise the highest degree of care. * * * We think any juror would construe the instruction to mean that a failure to see and know what she *could* have seen and known would warrant a finding of negligence."

 We have concluded that Instruction No. 4 was prejudicially erroneous. In effect, it provides that if at some time after entering the intersection plaintiff *could* have seen defendant's car had she looked to the north, and *could* have realized that there was danger of a collision and *could* have stopped before going into the path of defendant's car and failed to do those things, and that such was negligence which contributed to cause the collision, then plaintiff was barred from recovery. The instruction places upon plaintiff the absolute duty of looking and of seeing all that it was possible to see, of realizing the danger if it were possible to do so, and of stopping her car in time to avoid the collision if it were possible to do so. Such is not the law. Plaintiff was only required to exercise the highest degree of care in looking, seeing, realizing and in endeavoring to stop. As in the Toburen case, this instruction placed upon plaintiff the absolute duty of seeing and knowing what she *could* have seen and known and the additional duty of stopping if she *could* have done so. Under the particular facts of this

case, and the positive nature of the instant submission, we think a juror would have understood the instruction to mean that if plaintiff failed to see the car, realize the danger and stop before the impact if she *could* have done those things, then she was guilty of negligence.

Defendant says that the element concerning the degree of care required of plaintiff is supplied in the first paragraph of the instruction. It should be noted, however, that the statement referred to is limited to the duty of keeping a lookout and does not apply to the general operation of an automobile. Defendant also contends that the instruction under consideration requires a finding of "negligence" and that Instruction No. 2 defines negligence as "a failure to exercise the highest degree of care"; that all the instructions must be considered together and, when so considered, the jury was instructed as to the degree of care required of plaintiff. He cites Taylor v. Alexander, Mo.Sup., 283 S.W.2d 588, Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, and Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541. We have, of course, often held that instructions are to be construed together and that omissions in one instruction may, under certain circumstances, be supplied by their inclusion in other instructions. However, under the particular wording employed in the instruction under consideration, we are convinced that the requirement that the jury find that plaintiff was negligent (which is defined in another instruction) does not cure the prejudicial effect of the criticized portion thereof. The jury should have been told, in plain language, that plaintiff was required to use the highest degree of care to do the hypothesized acts so that the jury would have understood that she was not charged with the absolute duty to do all that could have been done, as specified in the italicized portion of the instruction.

Since the judgment must be reversed and the cause remanded because of the error noted in Instruction No. 4, we need not

determine other contentions of error in regard to that instruction, nor consider the errors alleged to exist in Instruction No. 3, as defendant's counsel, prior to another trial, will have an opportunity to re-examine those instructions and make such corrections as he may deem necessary in view of the attacks made thereon.

The judgment is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.