**James LAY, Respondent,**

v.

**Harold Francis McGRANE and Donald B. Hays, Appellants.**

No. 47175.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1960.

Motion for Rehearing or Modification of Opinion or to Transfer to Court en Banc Denied Feb. 11, 1960.

Opinion Modified on Court's Own Motion Feb. 11, 1960.

George F. Heege, Clayton (John H. Martin, St. Louis, of counsel), for appellant.

Walther, Barnard, Cloyd & Timm, by George W. Cloyd, St. Louis, for appellant Hays.

Oscar M. Lamm, St. Louis (Joseph G. Stewart, St. Louis, of counsel), for respondent Lay.

COIL, Commissioner.

James Lay was a passenger in an automobile operated by his host, Donald Hays, when that vehicle and a car operated by defendant Harold McGrane collided. Lay's verdict was for $16,500 and both defendants have appealed from the ensuing judgment. Plaintiff submitted his case against Hays on humanitarian negligence assignments, failure to slacken or swerve, and as to Mc-Grane on the primary negligence specification, failure to yield the right of way. Hays contends the evidence not only failed to make a submissible humanitarian case but that there was no substantial evidence of any negligence on his part and that, in any event, the trial court erred in giving instructions. Defendant McGrane contends the trial court erred in giving plaintiff's instruction 1.

Hays does not contend that the humanitarian doctrine is inapplicable (as between guest and host) where, as here, plaintiff was a guest-passenger in the host-defendant's automobile. We shall, therefore, assume without deciding that instant plaintiff properly could submit his case against defendant Hays under the humanitarian doctrine. See Downing v. Dixon, Mo., 313 S.W.2d 644, 650 [3]; Downing v. Dixon, Mo.App., 314 S.W.2d 927, 929; Thompson v. Gipson, Mo., 277 S.W.2d 527, 532 [9]. See also Mc-Combs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, a guest-passenger versus driver-host humanitarian case.

■ In determining whether there was evidence to support the hypothesis that after plaintiff was in a position of imminent peril defendant Hays, in the exercise of the highest degree of care, could have so acted as to have avoided collision with defendant McGrane's automobile, we review the evidence from a standpoint favorable to plaintiff and give him the benefit of all reasonable inferences.

So stating the evidence, a jury reasonably could have found the facts to have been as they appear in the following statement. Laura was an east-west and Mimika a north-south St. Louis street which intersected at right angles. Each was 15 feet wide and level leading into and within the intersection. There were no stop signs or other forms of traffic control at the intersection. There was an offset in Laura at its intersection with Mimika. The center line of Laura east of Mimika became Laura's north curb line west of Mimika, so that as one proceeded west on Laura he "jogged" obliquely left in order to proceed west on Laura west of Mimika. There was a residence facing Laura at the southeast corner of the intersection.

On August 1, 1957, the streets were dry and about 4:20 in the afternoon of that bright day, plaintiff was a left rear-seat passenger in the automobile being driven by Hays west on Laura. McGrane drove his car north on Mimika. Hays' left rear fender and bumper were struck by the left front of defendant McGrane's car at about the center of the intersection, i. e., the Hays car had proceeded west and slightly southwest to a point where all but its rear two feet was west of the center line of Mimika and (by fair inference) its left wheels close to the center line of Laura (west of Mimika) and the McGrane car's left side was adjacent to the center line of Mimika. Plaintiff did not see the McGrane car until an instant before the collision when he said "look out" and attempted to protect his face with his hands. Hays did not see the McGrane car until he heard plaintiff exclaim and then saw "a flash as he hit me."

Each automobile approached the intersection at 20 miles per hour and each slowed to and entered the intersection at 15 miles per hour and at the same time. At 15 miles per hour each automobile could

have been safely stopped in 35 feet including reaction time. When 50 feet east of the east curb line of Mimika, Hays, in the exercise of the highest degree of care, could have seen an automobile on Mimika approaching the intersection from the south when it was 250 feet away from and continuously up to the collision point. McGrane didn't see the Hays car until it "first started to enter the intersection" and, as noted, Hays didn't see the McGrane car until the instant of impact.

There was no substantial evidence from which the jury reasonably could have found that if Hays had maintained a proper lookout and if when he was 50 feet east of the east curb line of Mimika he had seen McGrane's car approaching the intersection, he should have observed any reasonable appearances of that approach from which he should have known of McGrane's obliviousness to his (Hays') approach; taking into account particularly the fact that Hays properly could rely to some extent and for some period of time on McGrane's observance of his duty to yield the right of way. (Under instant circumstances, i. e., a host-passenger humanitarian doctrine submission, it would appear that it would have been the reasonably apparent obliviousness of McGrane rather than the obliviousness of plaintiff which would have extended plaintiff's zone of imminent peril.) Thus, we think it clear that the jury properly could not have found that plaintiff was in a position of imminent peril until the Hays automobile was a few feet from the point after passing which Hays could not have stopped his automobile short of the path of McGrane's car. Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 38 [4]. The jury reasonably could have found, however, that when the Hays car reached some place a few feet short of the point after passing which Hays could not stop his automobile short of the path of McGrane's steadily approaching car, plaintiff was in imminent peril of being injured by a collision between the Hays and McGrane vehicles. McCombs v.

Ellsberry, supra, 85 S.W.2d 138. There was no duty on Hays to act until plaintiff was in imminent peril and consequently the decisive question is whether Hays, in the exercise of the highest degree of care and with the means and appliances at hand, and with requisite safety to others, could have so acted after plaintiff was in imminent peril as to have avoided the collision.

When Hays was at least 50 feet east of Mimika's east curb line he saw or in the exercise of the highest degree of care should have seen McGrane's car approaching the intersection when McGrane was at least 50 feet south of Laura's south curb line and approaching at the same speed he (Hays) was traveling and with the McGrane car's left side parallel with and adjacent to the center line of Mimika. Hays knew or in the exercise of the highest degree of care should have known that it would take each automobile, proceeding toward the intersection at 20 miles per hour and slowing sufficiently to enter the intersection at the same time at 15 miles per hour, *more* than 35 feet in which to stop. As noted, Hays testified that it would take him 35 feet to stop at 15 miles per hour and the jury reasonably could have found that he was chargeable with knowledge that McGrane would require no shorter stopping distance at 15 miles per hour. There was no testimony as to the stopping distance required for either car at 20 miles per hour or at any speed between 15 and 20 miles per hour. Consequently, we have said above that Hays in the exercise of the highest degree of care should have known that it would take each automobile *more* than 35 feet in which to stop, but there was no evidence of how much more.

Hays also knew or in the exercise of the highest degree of care should have known that when the front of his automobile was more than 35 feet east of the path of McGrane's car and when McGrane's car was at the same time the same distance from the path of the Hays car and was about to pass, at undiminished speed, the

point after which he could not stop short of the path of the Hays car, that unless he (Hays) then took effective action to avoid it, a collision was inevitable. But, as we have noted, there was no evidence of the distance in which Hays could have stopped at 20 miles per hour or at speeds between 15 and 20 miles per hour, nor evidence that Hays knew those distances, whatever they were. Consequently, the point after passing which Hays could no longer stop short of McGrane's path cannot be exactly fixed, nor can it be said with demonstrable mathematical precision that Hays thereafter could have stopped short of McGrane's path. We need not decide, however, whether the evidence, including the circumstantial evidence, was sufficient to permit a jury reasonably to find that Hays could have averted the collision by stopping his automobile short of the path of the McGrane car after plaintiff was in imminent peril. That is because we are of the opinion that the evidence was clearly sufficient to permit the jury to reasonably find that Hays, in the exercise of the highest degree of care and after plaintiff was in imminent peril, could have avoided the collision by slackening his speed and swerving to his right. There was no direct evidence of the distance required to slacken the speed of the Hays car from any particular speed to any other speed, nor was there direct evidence as to the distance required to swerve sufficiently at given speeds to have avoided the collision. It is a reasonable inference from the testimony, however, that there were no automobiles parked or traveling on the east side of Mimika north of Laura, and there was evidence that the east half of Mimika was wide enough for two automobiles to travel side by side. We have heretofore noted the evidence indicating that Hays could have stopped his automobile short of the path of the McGrane car had the two automobiles approached and reached the intersection at constant speeds of 15 miles per hour rather than, as was the evidence, at 20 miles per hour, for a distance, reduced to 15 miles per hour by the time the

automobiles at the same time entered the intersection. We are of the opinion that the jury reasonably could have reasoned from the foregoing facts that after plaintiff was in imminent peril, Hays, in the exercise of the highest degree of care, could have avoided the collision by slackening his speed and swerving to his right short of the path of the McGrane car. Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 547–549.

It is true that plaintiff submitted disjunctively slackening speed or swerving. Inasmuch, however, as this case must be remanded for the trial court's error in giving an instruction, and, inasmuch as we have held plaintiff made a humanitarian slackening and swerving case, we need not determine whether the evidence was sufficient to have supported the submission of slackening or swerving.

It will serve no purpose to review and discuss the many cases cited by defendant Hays in support of his contention that plaintiff failed to make a submissible humanitarian case. Those cases state, discuss, and apply to particular fact situations the same well-established principles which we have used in determining whether instant plaintiff made a humanitarian case. The basic fallacy in defendant Hays' supporting argument is his view that plaintiff was bound by all the testimony of defendant Hays because Hays was plaintiff's witness. Both defendants were plaintiff's witnesses and, of course, plaintiff was bound by the testimony of each in so far as it was the only evidence on a particular subject. But plaintiff was not bound by Hays' or any other of his witnesses' testimony as to matters on which there was other evidence adduced by plaintiff, not contradictory of plaintiff's own testimony, which justified a contrary conclusion. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 298 [4, 5]. And plaintiff, while bound by his own testimony, was not bound by his or his witnesses' estimates of speed and distances where, as here, those estimates were not inconsistent with

plaintiff's theory of the case, and thus instant plaintiff was entitled to rely upon the estimates of speed and distances made by either of the defendants and upon the distances proved by defendant McGrane's pictures as explained by the photographer who took them. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280 [2]. The jury was entitled to believe all or none of the testimony of any witness or believe it in part and reject it in part. Kickham v. Carter, Mo., 314 S.W.2d 902, 905 [1]. Thus, for example, Hays' testimony that he looked to his left as he approached the intersection and saw no vehicle was not binding on plaintiff either as proof that Hays maintained a proper lookout or that McGrane's car was not in plain sight when Hays looked, and, of course, where a duty to keep a lookout existed, Hays' failure to have seen what, in the exercise of the highest degree of care, he should have seen was no excuse for his failure to have acted under the humanitarian doctrine which embraces discoverable as well as discovered peril where there is a duty to keep a lookout. The mathematical computations made by defendant Hays to demonstrate his proposition that no humanitarian case was made or to demonstrate the factual similarity between the present case and the cases upon which he relies are based upon the above-noted erroneous view as to the evidence upon which plaintiff could rely.

■ The same evidence which we have held justified a humanitarian submission against defendant Hays also supported a primary negligence submission against him for failure to have maintained a proper lookout, and plaintiff, especially an apparently non-negligent plaintiff, may be well advised to consider whether primary negligence is not the more appropriate submission.

■ Plaintiff's instruction 2, submitting his case against defendant Hays on humanitarian negligence, was:

"The jury is instructed that if you find and believe from a preponderance or greater weight of all the credible evidence that the automobiles operated by both defendants collided within the intersection of Laura and Mimika, and on the occasion, mentioned in evidence, and if you further find and believe that as defendant Hays approached said intersection, he saw or could have seen the automobile of defendant McGrane northbound on Mimika and approaching said intersection toward his automobile's course of westbound travel, and that said automobiles were likely to collide, if you so find; and if you also find that plaintiff James Lay was in Hays' automobile, and Hays knew or should have known James Lay was in a position of imminent danger of being injured by said collision, in time thereafter, with the means and appliances at hand, with reasonable safety to anyone in his automobile or on the street there, to have slackened the speed of his automobile, or changed its path of travel, and thus avoided said collision; and if you find and believe defendant Donald Hays failed so to do, then you may find from such facts and circumstances, if you believe them to be true, that defendant Donald Hays was negligent, and if you further find that said negligence caused or contributed to cause plaintiff to sustain injuries, then your verdict should be in favor of the plaintiff James Lay and against the defendant Donald Hays, and this is true even though you may find defendant McGrane was also negligent."

Hays contends the instruction erroneously placed an absolute duty on him to have discovered the approach of the codefendant's automobile, i. e., the duty to have seen what he could have seen unqualified by reference to any standard of care. Defendant Hays calls attention to the portion of the instruction which hypothesized that as Hays approached "he saw or could have seen the automobile of defendant McGrane northbound on Mimika and approaching said intersection toward his automobile's course of westbound travel, and that said automobiles were likely to collide, if you so find." Additional portions of the in-

struction, however, should be considered as embraced within the attack made. Thus it is that the instruction's further hypotheses that "and Hays knew or should have known James Lay was in a position of imminent danger of being injured by said collision, in time thereafter, with the means and appliances at hand, * * * to have slackened the speed," etc., are defective in the same respects as are the parts specifically pointed out by Hays.

When all the foregoing portions are considered, it seems apparent that the instruction required Hays to have seen McGrane's approaching automobile and to have seen that the automobiles were likely to collide if he *could* have done so, irrespective of whether, in the exercise of the highest degree of care, he could or should have done so; and, under the facts of this case, more important, the instruction permitted the jury to impose liability by finding (among other things) that Hays knew or should have known that his passenger Lay was in a position of imminent danger rather than by finding that Hays knew or in the exercise of the highest degree of care should have known that his passenger was in a position of imminent danger; and permitted the jury to find in effect that Hays, after plaintiff was in imminent peril, could have avoided the collision rather than requiring a finding that after plaintiff was in imminent peril Hays, in the exercise of the highest degree of care, could have avoided the collision.

In brief, the instruction wholly failed to inform the jury that the applicable test or standard was not what Hays could have seen or could have known or what the jury might think Hays should have known or could or should have done, but that the standard by which the jury was to gauge defendant Hays' conduct was whether he saw or knew or, in the exercise of the highest degree of care, should have seen or should have known, and whether in the exercise of the highest degree of care he could have acted in avoidance, etc.

The recent cases of Welcome v. Braun, Mo., 319 S.W.2d 586, 588, 589, and Johnson v. Presley, Mo., 320 S.W.2d 518, 524 [4], are in point. In the Johnson case the pertinent language of an instruction was, if you "further find from the evidence that by keeping a lookout Henry Armstrong could or should have known that plaintiff was in such position of imminent peril, * * *." It was there held that the instruction was prejudicially erroneous and not subject to clarification by other instructions because it was based upon an erroneous theory as to the law of the case in that the instruction did not limit the duty imposed by reference to any standard of care.

Plaintiff contends that inasmuch as instructions should be read together and as a whole and their correctness determined by the manner in which average men would understand the language used, and inasmuch as the court gave instruction 8 which told the jury that it was the duty of operators of motor vehicles to exercise the highest degree of care and defined the meaning of "highest degree of care," that there was no doubt that the jury would understand the "true meaning" of instruction 2. We are unable, however, to understand how the application of either of the propositions urged by plaintiff cured the erroneous submission of instruction 2. It seems as likely that the jury would construe instruction 2 to be in conflict with instruction 8 as that it would understand from them read together that Hays' liability as directed by instruction 2 was predicated on whether he exercised the highest degree of care in discharging his lookout duty, in recognizing plaintiff's position of imminent peril and in acting thereafter.

We call attention also to the fact that the only requirement in the instruction for a finding that plaintiff was in fact in imminent peril was the assumption in the phrase, "Hays knew or should have known James Lay was in a position of imminent danger."

We hold the giving of plaintiff's instruction 2 constituted reversible error as to defendant Hays.

Defendant McGrane's sole contention is that the trial court erred in giving plaintiff's instruction 1. That instruction was:

"The jury is instructed that if you find and believe from a preponderance or greater weight of all the credible evidence, that on the occasion in question, defendant Donald Hayes, was driving an automobile west on Laura Avenue, and that defendant McGrane was operating his automobile north on Mimika Avenue, and that said motor vehicles collided within the intersection of said public highways, if so; and if you further find and believe that plaintiff was a passenger in the automobile of defendant Hayes and in the exercise of ordinary care for his own safety, if so, and that the automobile of defendant Hayes entered said intersection first or that both of said automobiles arrived at said intersection at approximately the same time, then it was the duty of defendant McGrane to yield the right of way to the automobile of defendant Hayes, and if you find that defendant McGrane failed so to do, you may find him negligent, and if you further find that as the direct and proximate result of said negligence plaintiff sustained injuries, if any, then your verdict should be in favor of the plaintiff and against the defendant McGrane, and this is true even though you find defendant Hayes was also negligent."

 McGrane attacks the instruction on the ground that it imposed upon him an absolute duty to yield the right of way to Hays irrespective of the circumstances shown in evidence. He concedes that Section 304.021 RSMo 1949, V.A.M.S. was applicable and that it provides in part that "The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway * * *. When two vehicles enter an intersection from different highways, at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right." He correctly contends that the obligations imposed by the statute are not under all circumstances absolute and that there may be a valid excuse for one's failure to have observed the mandate of a traffic statute, i. e., there may be exceptional circumstances which would permit nonobservance of the statutory rule. MacArthur v. Gendron, Mo. App., 312 S.W.2d 146, 150; James v. Berry, Mo.App., 301 S.W.2d 530, 532. The difficulty with defendant McGrane's position, however, is that the evidence in this case not only fails to show any exceptional circumstance which would permit a jury to find that McGrane's failure to observe the statutory mandate was excusable but, on the contrary, the evidence affirmatively shows a situation calling for the strict application of the statutory rule.

 Defendant McGrane seems to take the view that because the evidence was that he did not see the Hays car until he got to the south curb of Laura and that thereafter, despite braking and swerving, he could not avoid the collision, the evidence, therefore, showed that it was impossible for him to have observed the statute and to have yielded the right of way to Hays, and that those evidentiary circumstances should have been submitted for a jury finding whether they constituted a valid excuse for his failure to have yielded the right of way. The evidence was such that when McGrane was 50 feet south of the south curb line of Laura, he saw or should have seen the Hays automobile 50 feet east of the east curb line of Mimika and should have realized that if both cars continued at their respective speeds they would reach and enter the intersection at approximately the same time, and, consequently, McGrane had the duty to approach the intersection at a speed which would enable him to yield the right of way to Hays. And, of course, even if McGrane for some reason could not have seen the Hays car until the instant it entered the intersection,

his duty to yield the right of way included the duty to approach the intersection in such manner as to permit Hays to exercise the right of way in safety. Creech v. Blackwell, Mo., 298 S.W.2d 394, 400[6]. Certainly the fact that one who by statute is to yield the right of way approaches and enters an intersection at a speed which prevents him from observing the mandate of the statute, does not constitute a submissible circumstance to support a finding of valid excuse for nonobservance. Under instant facts instruction 1 was not erroneous for any of the reasons urged by defendant McGrane.

Neither defendant contends that the judgment is excessive and neither contends that there was any error in the trial or submission of the liability question which affected the damages issue or that the damages and liability issues may not be fairly tried separately.

The judgment is affirmed as to defendant McGrane; the portion of the judgment as to the amount of damages is affirmed as to defendant Hays; and that portion of the judgment as to liability against defendant Hays is reversed and the case is remanded for a new trial as to defendant Hays on the issue of liability only. The judgment against defendant McGrane will be held in abeyance until the issue of liability as to defendant Hays is determined and if the jury finds that Hays is liable, a judgment for $16,500 will then be entered against both defendants; if the jury finds Hays not liable, the judgment for $16,500 against McGrane will be reinstated as of the date of the original judgment.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

WESTHUES and HOLLINGSWORTH, JJ., concur.

HYDE, P. J., concurs in separate opinion filed.

DALTON, J., concurs and concurs in separate concurring opinion of HYDE, P. J.

HYDE, P. J., (concurring).

I concur in the result because I think plaintiff's evidence shows a case of primary negligence against defendant Hays, which plaintiff should have an opportunity to try, and because I agree that Instruction 1 authorizing a verdict against defendant McGrane was not erroneous. However, I deem it advisable to state my view that the humanitarian negligence rule is not applicable to a situation where a plaintiff is riding as a guest in a defendant's automobile. Certainly, such a plaintiff is never in a position of imminent peril from the car defendant is operating and I think that is necessary to make the humanitarian rule applicable. Suppose the defendant drives his car into a tree at the side of the road instead of another car, would his guest have a submissible humanitarian case on the theory that the driver could have stopped or swerved after he was moving toward the tree and failed to do so? I think a position of peril from the vehicle operated by the defendant (not danger to a passenger from driving the car against another object) is essential to the applicability of the humanitarian rule and I do not think this rule can properly be extended to cases of guests riding in a car which is driven into a collision with another car or object, because I would classify such conduct as primary negligence. In this case, plaintiff's theory of peril was peril into which he was being taken by the active negligence of defendant Hays in driving his car into collision with another car. Such peril was being created by the driver as he moved toward the other car. It is my view that it is primary and not humanitarian negligence thus to take another person into such peril. See McClanahan v.

St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, in which we overruled cases departing from the true principles of the humanitarian rule. Even that peril of plaintiff did not entirely depend upon the acts of defendant Hays, because it could have been eliminated by action of the driver of the other car, and so was peril partly due to an instrumentality that defendant did not control.

It is true that in McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, a guest case was submitted on humanitarian negligence but no contention was made that the humanitarian rule was inapplicable. Therefore, as in this case, there was no ruling on its applicability. Likewise, in the two Dixon cases, Downing v. Dixon, Mo.Sup., 313 S.W.2d 644, and Downing v. Dixon, Mo.App., 314 S.W.2d 927, it was considered unnecessary to pass on the applicability of the humanitarian rule in such a situation, because of the results reached in those cases. In Thompson v. Gipson, Mo.Sup., 277 S.W.2d 527, 532, we indicated the view that the driver's negligence toward a guest was primary rather than humanitarian negligence. I think that is the correct view of such a situation.

It seems likely that there was primary negligence in this case which commenced before reaching the last point at which it would have been possible for defendant Hays to have slackened speed and swerved his car before reaching the place of collision; but I do not think that such primary negligence can be changed to humanitarian negligence, under such circumstances, for the reasons hereinabove stated. While the principles for determining defendant's negligence after reaching such point (if plaintiff wants it so limited) may be similar to those considered in determining negligence under the humanitarian rule (ability to stop short of collision, slacken speed or swerve and failure to do so), nevertheless plaintiff could not have been in a position of imminent peril from the car defendant Hays was driving, and that prevents the applicability of a humanitarian submission in my opinion. Furthermore, in a case like this, where there is no claim of contributory negligence on the part of the guest, it is difficult to see what purpose could be served by a humanitarian submission.