Mary Ellen RAWLEY, Plaintiff-Respondent,

v.

EILERMANN TRANSFER COMPANY, a Corporation, Con P. Curran Printing Company, a Corporation, and Ace Cab Company, Defendants-Appellants.

Nos. 31598, 31602.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Guilfoil, Caruthers, Symington, Montrey, John P. Montrey, Morris A. Shenker, R. J. Slater, St. Louis, for defendants-appellants.

Hullverson, Richardson & Hullverson, Corinne Richardson, Thomas Hullverson, St. Louis, for plaintiff-respondent.

ANDERSON, Judge.

This is an action for damages for personal injuries which occurred when a taxicab in which plaintiff was a passenger collided with a truck within the intersection of Ninth Street and Washington Avenue in the City of St. Louis. The taxicab was owned by defendant Ace Cab Company, and the truck was owned by defendant Eilermann Transfer Company. At the time of the collision, the truck was being taken to the garage where it was kept after making deliveries for defendant, Con P. Curran Printing Company. There was a verdict and judgment for $15,000 in plaintiff's favor against the three defendants. From the judgment, said defendants have appealed.

Ninth Street is a one-way street for North bound traffic. It has four lanes. Washington Avenue runs east and west and is at least four lanes wide, or wider. The intersection is in downtown St. Louis. The Wayco Parking Building is at the southwest corner of the intersection and the Statler Hotel is at the southeast corner. The Lennox Hotel is on the northeast corner of said intersection. There were at the time, no stop signs for east and west traffic on Washington Avenue at the intersection. A major stop sign for North bound traffic was located on the east side of Ninth St., ten or fifteen feet south of the Washington Avenue curb line. There were no cars parked at the West curb of Ninth St. Counsel for all parties stipulated that the Wayco Parking Building on the southwest corner of the intersection starts fourteen feet south of the south curb line of Washington. This fourteen feet is sidewalk area. There is a sidewalk running north on the west side of Ninth St. adjacent to the Wayco Building, but the record fails to show its width. There was ice and snow on the ground at the time in question.

Jean S. Martin was driving the truck, which was owned by defendant, Eilermann Transfer Company. He had completed the deliveries for defendant, Con P. Curran Printing Company and was just prior to the collision traveling North on Ninth Street to turn in the truck at the Eilermann Garage. It was about 4 P.M. at the time he

approached Washington Avenue. William Clarence Gunther was the driver for the Ace Cab Company which was involved in the accident.

Plaintiff personally testified, and also called the cab driver and truck driver as witnesses in plaintiff's case in chief.

Plaintiff testified that the cab entered the intersection at a speed of fifteen to twenty miles per hour and as it entered the intersection, it began to swerve. She stated she then looked to her right and saw the truck coming at about twenty-five miles per hour. It was twenty-five feet south of the intersection when she first saw it, and traveling in the right hand lane. She further testified that the truck did not stop from the time she first saw it until it collided with the cab. She stated that she did not recall either the truck driver or cab driver sounding a horn, and that the truck did not stop at the stop sign.

Jean S. Martin, the driver of the truck was called as a witness by plaintiff. He testified that as he approached the intersection, he was traveling in the third lane from the west side of the street. He stated that he stopped his truck at a point about even with the stop sign, then started forward in first gear and "nosed" out into Washington Avenue. He further testified that when the truck was started across the pedestrian crossing, he put it in second gear and "eased out" slowly into Washington Avenue; that when he got to the crosswalk, he looked to his left, that being his first opportunity to see what was coming east on Washington and at that time, he first saw the cab which was after he had "nosed" out into Washington Avenue; that the cab was then about 2 car lengths from the intersection; that when he first saw the cab, the speed of the truck was between eight and ten miles per hour; that he could not estimate the speed of the cab, but it was coming too fast for him to stop to avoid a collision; that when he first noticed the cab, he immediately applied the brakes of the truck; that he continued to watch the cab;

that the cab driver applied the brakes of the cab when he observed the truck entering Washington Avenue, and "slid" sideways toward the Lennox Hotel; that the right front fender of the cab came in contact with the left front fender of the truck; that the truck was stopped when the collision occurred and the point of contact was on the south side of Washington Avenue. The witness further testified he did not swerve the truck from the time he first observed the cab until the impact; that he was perhaps ten or twelve feet south of the Washington Avenue curb line when he stopped the truck at the stop sign; that he traveled several feet from the pedestrian cross walk to the point of collision; that the truck was partly into Washington Avenue when he first saw the cab, and that he might have traveled two or three feet from the south curb line of Washington Avenue after he saw the cab, that is, the bumper of the truck was two or three feet from said curb line, and he, sitting in the cab was three feet south of the curbline; that under the prevailing weather conditions he going eight to ten miles per hour could stop the truck in about three feet. He further testified when asked if any horns were sounded, "not to my knowledge, I didn't sound any horn, and I didn't hear any horns."

William Clarence Gunther, the cab driver, was also called as a witness for the plaintiff. He testified that as he approached the intersection, he was traveling in the curb lane, and that the collision occurred about the middle of the intersection; that the front part of the truck collided with the right front fender and front door of the cab, at which time his cab was slightly at an angle facing the Lennox Hotel; that the speed of the cab as it approached the intersection was about ten miles per hour; that when he first saw the truck it was moving and was about fifteen feet from the curb to his right, traveling about 10 miles per hour, and to his knowledge the truck was not stopped at the stop sign but kept "rolling toward me" from the time he first saw it until the impact at about the same

rate of speed; that when he first saw the truck he applied the brakes on the cab and swerved to the left; where its left side was about at the white line in the middle of Washington Avenue; that the impact forcibly pushed his cab farther out into the street; and that the truck got into the intersection about 6 feet.

On cross examination, witness testified he had been traveling fifty miles per hour, but reduced the speed of the cab to ten miles per hour as he approached the Ninth Street intersection; that one going east on Washington Avenue would have to be almost to the building line before the stop sign could be seen; that his cab was just entering the intersection when he first saw the truck which was about 20 feet from the curb line; that the cab was about halfway through the intersection when it was hit by the truck; that both the truck and the cab were barely moving at the time of impact; that the cab entered the intersection at ten miles per hour; that he swerved to the left and applied the brakes in an effort to get out of the way of the truck and was going about one mile per hour when the cab was halfway into the intersection; that when he first saw the truck it was south of the stop sign and to the best of his knowledge, it was not stopped at the stop sign. On redirect examination, the witness testified that the truck was traveling faster than 10 miles per hour.

Plaintiff was injured in the collision, but since no point is made as to the extent thereof, or that the verdict is excessive, we will not review the testimony with reference to said injuries.

The case against the Ace Cab Company, was submitted on the alleged negligence of the cab driver's failure to warn. As against the two other defendants, the case was submitted on (1) failure to stop the truck at the stop sign, (2) failure of the driver of the truck to keep a careful and vigilant watch, and (3) failure of the truck driver to yield the right of way to the Ace Cab. Defendant, Ace Cab Company offered no evidence.

Ace Cab Company contends that the trial court erred in overruling its motion for a directed verdict at the close of plaintiff's case and at the close of all the evidence because the alleged negligent failure by its cab driver to sound a warning was not a proximate cause of the collision, inasmuch as the truck driver had all the timely notice of the cab's presence and movements that a warning signal could have afforded him.

 Both the cab driver and the truck driver were witnesses for the plaintiff. In such a situation, plaintiff was bound by the testimony of each insofar as it was the only evidence in the case. But she was not bound by the testimony of either as to matters on which there was conflicting testimony adduced or bound as to estimates of speed and distances. Lay v. McGrane, Mo., 331 S.W.2d 592; Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295. Nor is plaintiff bound by her own estimates of speed and distances, but in that regard may rely upon the testimony of either the cab driver or the truck driver provided such testimony is not contrary to plaintiff's theory of case. Lay v. McGrane, supra. The jury was entitled to believe all or none of the testimony of any witness with respect to said estimates or believe it in part or reject it in part. And this is true with respect to facts testified to, except that plaintiff is bound by her own testimony in that regard. Kickham v. Carter, Mo., 314 S.W.2d 902.

 Whether the Cab Company should prevail in its contention here depends upon whether plaintiff made a case of negligence against it on the issue of failure to warn, for when plaintiff submitted the case solely on that issue she abandoned all other allegations of negligence contained in her petition. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91. And in determining the issue, we must grant plaintiff the benefit of all the evidence favorable to her and every favorable and reasonable inference warranted by the entirety of the evidence, subject of course, to the exceptions heretofore noted. Stout v. St. Louis County Transit

Co., Mo.App., 285 S.W.2d 1. If there was evidence from which the jury could reasonably infer that a warning by the cab driver would have resulted in the accident being avoided, the issue of proximate cause was properly a jury question.

The cab driver testified that as he entered the intersection, he ͮaw the truck driver coming past the stop sign and continue with unabated speed toward the intersection. The cab driver said the truck was 15 feet south of the south curb line of Washington Avenue and the stop sign was located ten or fifteen feet from the intersection. He further testified that to the best of his knowledge, the truck did go by the stop sign. There was other evidence that the truck did not slow down or change its course until the collision. The truck driver did not see the cab until the truck was almost into the intersection. There was testimony from which it could be reasonably inferred that the cab driver never sounded the horn on his cab. From this evidence, it could be reasonably found that when the cab driver first observed the truck running the stop sign a dangerous situation arose and that he should have foreseen or realized the probability of a collision, and in the exercise of the highest degree of care should have sounded a warning of his presence. If he had done so, the truck driver would have become aware of the presence of the cab sooner than he did and could have taken steps to avoid the collision. He could have stopped the truck before reaching the path of the cab, thus permitting the cab to pass safely in front of the truck. It is also a reasonable assumption that he could have swerved the truck, or slackened the speed thereof and thereby avoided contact with the cab. We may not, therefore, say, as a matter of law that the failure of the cab driver to sound his horn when he first observed the truck moving past the stop sign was not a proximate cause of the collision. The point urged that the truck driver had all the timely notice of the cab's presence given him is not supported by the evidence.

The trial court did not err in refusing to direct a verdict in favor of defendant Cab Company.

The sole ground upon which appellants Eilermann Transfer Co. and Con P. Curran Co. rely for reversal of the judgment is the failure of the trial court to sustain their motion for mistrial for alleged prejudicial statements made by plaintiff's counsel during his closing argument to the jury. Objections were made at the time the statements were made, but the motion for mistrial was not made until after the close of the argument.

One of plaintiff's chief complaints was an alleged injury to her neck which she claimed resulted from the collision. Prior thereto, she had suffered injury to her neck in previous accidents. When she took the stand, plaintiff was thoroughly cross-examined concerning those prior injuries, and also concerning her testimony in a deposition with respect thereto. Subsequently, when recalled to the witness stand, plaintiff's attention was called to a statement given to a lawyer in Oklahoma City concerning a fall at the airport there. This incident was after the accident which was the subject of the present action. She was vigorously interrogated about what was said by her in that statement, the purpose apparently being to cast doubt on her present claim of severe injuries as a result of the collision, by showing by her statements she was working full time prior to her fall at the airport. Counsel for defendants Eilermann and Con P. Curran in his argument to the jury so argued, stating that she had while on the witness stand, admitted working full time in Oklahoma City. With this for a background, the following appears during the argument of plaintiff's counsel:

"Mr. Hullverson: * * * And Montrey says, he would like to have you believe, that she was perfectly all right. Naturally, he would like for you to believe that. But there is the evidence. Nobody can dispute it. And I lay it here for anybody's examination. Now,

she didn't take the stand to deny it. They called her back the second time. She got bawled up there. No dispute about that. She is a human being. If I put her on the stand again, they will rehash the same old stuff * * * How many statements do you think—now, use your common sense and judgment—how many statements do you think they have taken in her past about everything. She has been in other problems all her life with these accidents. How many statements do you think they got on her? You don't know how many he has got.

"Mr. Montrey: I object to an argument entirely outside the lawsuit, Your Honor. The evidence should be argued here. There is no evidence about this and it is not so.

"The Court: Argument of counsel.

"Mr. Hullverson: How many do you think they got on her from different places? * * *."

Counsel for appellants Eilermann and Con P. Curran contend that part of the argument in which counsel for plaintiff stated "How many statements do you think they got on her. You don't know how many he has got. * * * How many do you think they got on her from different places?" was without evidentiary support and prejudicial because its clear intendment was to imply that the defense was hiding evidence from plaintiff and the jury.

■ The remarks made by plaintiff's counsel apparently related to the possibility of other statements being taken about other accidents. It is true there was no evidence of other statements and counsel's speculation about same had no relevancy to the matter at hand, but it is doubtful that the jury would have regarded it as a charge that the defendants were suppressing evidence. And even if the argument was improper, we are not convinced that it was of such a prejudicial character as to warrant the dis-

charge of the jury. The trial court did not so consider it for he overruled the motion for mistrial and the motion for new trial in which the matter was again specifically brought to his attention. It must be assumed that before the trial court ruled on the motions he considered the effect of the incident on the minds of the jurors and on the outcome of the trial. It was a matter resting within the trial court's discretion. We do not believe there was an abuse of that discretion by the court's refusal to sustain the motion for mistrial on account of said argument.

Appellants, Eilermann and Con P. Curran, complain of the following argument of plaintiff's counsel, which they claim went beyond the scope of the evidence.

■ "The petition that was filed, for lack of prosecution it was dismissed. She never met this fellow, whatever his name was, in Tucson. Somebody else called up a lawyer in Tucson and said she had some damage to her car and she had some medical bill as a result of seeing that doctor on that occasion.

"Mr. Montrey: If your Honor please, I must again—

"Mr. Hullverson: And that was the evidence.

"Mr. Montrey: May I please address the Court? I must object again to counsel arguing completely outside the record. I don't know where he gets this stuff. That lawyer down there was her agent. That's the law. And I object to counsel arguing outside the record.

"The Court: Proceed. Argument of Counsel."

The record shows that in 1957, plaintiff was driving in Tucson, Arizona when her car was hit from the rear by a car driven by Claude Williams. It further appears that a suit was filed in her behalf against Claude Williams in the Superior Court of the State of Arizona in and for the County of Pima.

The complaint in that suit contained allegations of permanent disability and loss of earnings. This suit was dismissed for failure to prosecute on April 6, 1962. The attorney for plaintiff in that suit was a Mr. Schimmelpfenning. The record further shows that plaintiff testified she never met Mr. Schimmelpfenning and had never talked to him. Said attorney was hired for her by Mr. Carter, her attorney in Dallas, Texas. Mr. Carter made all the arrangements with reference to bringing the suit. She further testified she did not know the amount sued for, nor had she seen the allegations of the petition in that suit. She further stated that there was damage to her car at the time of the collision, and that she received medical attention for which she received a bill. In view of the foregoing statement of the record, we find the complaint made is without merit, and that the trial court did not err in refusing to declare a mistrial on account of said argument.

■ The final assignment of error also relates to the final argument of plaintiff's counsel. This episode appears in the transcript as follows:

"Mr. Hullverson: * * * The only other thing; talking about evidence. I brought some evidence in. I brought, what I thought, all of the evidence in. I am not like Montrey, who didn't want to let the doctor explain an operation; not like Montrey who didn't even want to let the doctor explain what the neck looks like, so that we may be here for two days, and objected to all those things.

"Mr. Montrey: If the Court please, my objection to counsel criticizing my right to protect the record and make objections. That's my duty. And I must do those things. And that's unfair argument again.

"The Court: Sustained."

It is argued by appellants that its motion for mistrial should have been sustained because the argument amounted to a charge of unethical conduct for the purpose of inflaming the minds of the jury with a hostility toward the defense.

It will be observed that the court sustained the objection, and that appellants' counsel did not ask for any other relief at that time. The court did what counsel requested. In our judgment, the court's failure to sustain the subsequent motion for mistrial on account of this argument was not an abuse of discretion.

We find no error in the record.

The judgment is affirmed.

RUDDY, P. J., and L. F. COTTEY, Special Judge, concur.